IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORINIO ALLEN PRUITT, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) No. 3:13-cv-1003 |
| TIM McCONNELL, CORRECTIONAL MEDICAL SERVICES, CENTURION MEDICAL INC., and FIRST MEDICAL MANAGEMENT, | ) ) Judge Sharp ) ) ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Corinio Pruitt, a state inmate presently incarcerated at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 (ECF No. 1). The complaint is before the Court for an initial review under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2).

**I.    Standard of Review**

The Court has granted the plaintiff leave to proceed *in forma pauperis*. Under the PLRA, the Court is required to dismiss any *in forma pauperis* action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In conducting the initial review of the complaint, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

**II.     Factual Allegations**

The defendants listed in the complaint are Tim McConnell, Correctional Medical Services, Centurion Medical Inc., and First Medical Management.

The plaintiff is incarcerated at Riverbend Maximum Security Institution. He has been sentenced to death for first-degree murder, and his appeals in his criminal case are still pending.

The plaintiff alleges that he has been suffering from a serious medical condition that has become worse over the course of the past year, and for which he has not received adequate treatment at RMSI. He first saw a physician about the problem on June 12, 2013. He explained to the doctor that he has "some type of fluid accumulating under [his] skin on [his] left side up and buttcheek." (ECF No. 1, at 4.) The doctor ordered blood work, an MRI, and an increase in the plaintiff's pain medication. The plaintiff tried to explain that the pain is not the issue. He claims he is "burning" from the swelling and having difficulty breathing. He asked for an MRI, and he was referred to Nashville General Hospital at Meharry for an MRI on July 9, 2013. While there, he did not see a specialist or talk to a physician to explain his symptoms. He simply received the MRI and was sent back to RMSI.

The plaintiff says he was sent back to Meharry on August 12 for a CT scan, but complains that, again, he did not see or speak with a specialist and was sent back to RMSI without having the fluid drained. It seems the plaintiff's problems have continued to worsen since that time. On August 22, 2013, he was given a steroid shot by a nurse practitioner at the prison, which temporarily relieved some of the burning but did not reduce the fluid build-up. The plaintiff's allegations indicate that he has not seen a medical doctor since sometime in July, despite the exacerbation of his symptoms. He says that the new doctor working at RMSI, Dr. La, came to the plaintiff's unit twice in August but did not examine or even see the plaintiff at either time. The plaintiff insists his treatment is "so delayed it's ridiculously unprofessional." (ECF No. 1, at 7.) He was told by a sick-call nurse that his condition cannot be diagnosed by the nurses, that only a doctor can diagnose his problem.

The plaintiff does not relay the results of the MRI or CT scan, but he insists that the fluid build-up is caused by some type of infection and needs to be drained and that he should be on antibiotics. He asserts that the fluid is causing serious health problems and might be contagious. The fluid is now spreading inside his left stomach and chest, causing constant tightness and difficulty breathing, severe pain in the genital and anal region, and a burning sensation elsewhere on his left side. He claims the skin between his legs and thighs has "turned black cause . . so much of this bacteria has leaked between [his] buttcheeks and under [his] scrotum area." (ECF No. 1, at 6.) The plaintiff says that, because of his condition, he cannot sleep, walk, or eat. He has repeatedly asked be sent to the hospital, and to have the fluid drained and cultured. He asks to see a "real doctor" because the medical personnel at RMSI are not listening to him while his condition worsens. He insists that the "prison officials" and the "medical personnel" are allowing him to suffer rather than sending him to be hospitalized for a cure. He believes the delay in treatment is because of the fact that he is on death row.

The plaintiff does not mention any of the four named defendants in the narrative section of his complaint.

**III.    Discussion**

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

With respect to the first element, a deprivation of a right secured by the constitution, the Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not

received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

The Supreme Court has clarified that an Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834. Within the context of acclaim related to the lack of medical care, the objective component requires that the medical need be sufficiently serious. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

To establish the subjective component of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). A defendant's state of mind is sufficiently culpable to satisfy the subjective component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835–36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106. Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-guess the medical judgments of prison officials and thus to constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n.5.

In the present case, the plaintiff clearly alleges the existence of a serious enough medical condition to satisfy the objective component of his Eighth Amendment claim. A close question is posed as to whether his allegations establish the subjective component, because the plaintiff clearly received some

medical care but disputes the adequacy of that care. In light of the plaintiff's allegations that his condition continues to deteriorate and he has not actually seen a doctor who can diagnose and treat his condition since July, the Court nonetheless finds, for purposes of the initial review, that the allegations of delay and dilatory treatment potentially go beyond mere negligence and suggest a denial of treatment "in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake*, 537 F.2d at 860. The Court therefore finds that the plaintiff has adequately alleged the first element of his § 1983 claim, the deprivation of a right secured by the constitution.

The next issue is whether the plaintiff has shown that the deprivation was caused by a person acting under color of state law. In that regard, to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability." (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

In the present complaint, the plaintiff has listed four defendants (one individual and three entities) by name, but he has not identified any of them or explained how or why they should be liable for the alleged deliberate indifference to his serious medical needs. He does not mention any of the named defendants in the fact section of his complaint. Instead, he blames "prison officials" and "medical personnel" generally, but those medical personnel and prison officials actually mentioned in the complaint are not named as defendants. In short, the Court finds that the complaint fails to establish a causal connection between his injuries and any actions taken by the named defendants, or to allege "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The complaint therefore does not satisfy the second element necessary to state a claim under § 1983: a showing that the alleged constitutional violation was caused by a person acting under the color of state law.

The Sixth Circuit recently held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (citing, among others, *Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. 2013)). Leave to amend is not required where a deficiency cannot be cured. *Id.* In this case, the Court cannot conclude that any amendment would be futile as a matter of law. Therefore, leave to amend will be granted, and the plaintiff will be permitted 30 days within which to file an amended complaint to attempt to satisfy the deficiency identified in this Memorandum.

An appropriate order is filed herewith.

_____
Kevin H. Sharp
United States District Judge